UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAREY GOMEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4186** |
| **AARDVARK CONTRACTORS, INC. ET AL.** | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is Defendant Huntington Ingalls Incorporated's Motion for Partial Summary Judgment, R. Doc. 240, which Defendant Jefferson Parish School Board joins, R. Docs. 287, 293. Although Huntington Ingalls Incorporated subsequently withdrew its Motion, R. Doc. 406, the Jefferson Parish School Board adopted and joined the Motion and is therefore the sole party pursuing this Motion now. Plaintiffs filed an opposition to the Motion. R. Doc. 290. Defendants filed a reply. R. Docs. 331, 324, 332. Oral argument on the Motion was held on May 13, 2020 via telephone. Having considered the parties' memoranda and oral argument on the Motion, the Court now rules as follows.

I.  RELEVANT BACKGROUND

Plaintiff Cary Gomez filed this suit on March 7, 2018, alleging severe asbestos exposure from a number of sources throughout his life. R. Doc. 1-2. Plaintiff claims he was exposed to asbestos first as a consequence of his father's employment at Avondale Shipyards in the 1960s, and later as a result of Plaintiff's work as a plumber for Aardvark Contractors, Inc. ("Aardvark") from 1988-2011. As a result of his repeated exposure to asbestos, Plaintiff was allegedly diagnosed with malignant pleural mesothelioma. In his original Petition for Damages, Plaintiff sued, among others, Defendants Huntington Ingalls Incorporated ("Avondale") and Jefferson Parish School

1

Board ("JPSB"). R. Doc. 1-2. In his original Complaint, one of the defendants that Plaintiff brought suit against was Wayne Manufacturing Company, wherein he alleged, in relevant part, that the company "manufactured and distributed asbestos containing products, specifically laminated wall boards on panels, consisting of marinite panels manufactured and distributed by Johns Manville Corporation." R. Doc. 1-2 at 7. Subsequently, on October 10, 2019, a First Supplemental and Amending Petition for Damages and Wrongful Death was filed by Plaintiffs Norma Gomez, Chance Gomez, Chucky Gomez (f/k/a Robin Patrick Newby, II), and Brittany Ford (collectively, "Plaintiffs"), the surviving heirs of Cary Gomez, who died on November 12, 2018. R. Doc. 212 at 1. Plaintiffs amended the original Petition for Damages to include wrongful death claims for grief and mental anguish, loss of consortium, loss of support, and loss of security. R. Doc. 212 at 2.

Avondale and JPSB filed their Answers and Cross-Claims to the Amended Complaint. R. Docs. 231, 239. Subsequently, Avondale filed a Motion for Partial Summary Judgment relating to the Johns-Manville Trust's Virile Share, which JPSB adopted and joined. R. Docs. 240, 287, 293. On May 12, 2020, Avondale file an ex-parte motion to withdraw its motion for partial summary judgment because it had settled with Plaintiffs. R. Doc. 406. Accordingly, this Order and Reasons will only reference JPSB henceforth.

Before delving into the merits of the instant motion for partial summary judgment, it would be useful to summarize the key facts of the Johns-Manville Litigation ("JM Litigation") and resulting Personal Injury Settlement Trust ("the Trust").

**A. Johns-Manville Litigation and Personal Injury Settlement Trust**

Johns-Manville ("JM") was the world's largest asbestos miner until it filed for bankruptcy protection in 1982. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 639 (2d Cir. 1988). The plan of reorganization that resulted involved the establishment of the Trust, which was designed to satisfy

the claims of all asbestos health victims, present and future. *Id.* at 640; *see also In re Joint E. & S. Districts Asbestos Litig.*, 878 F. Supp. 473, 484–85 (E.D.N.Y. 1995). As part of the reorganization plan, the "Bankruptcy Court would issue an injunction channeling all asbestos-related personal injury claims to the Trust." *Kane*, 843 F.2d at 640. This injunction required asbestos health claimants—present and future—to proceed only against the Trust on their claims and they could not sue Johns-Manville, its other operating entities, and specific other parties, including Johns-Manville's insurers. *Id.*

Following the formation of the Trust, litigation ensued to "restructure the mechanism for distributing compensation" to the people claiming "asbestos-related injuries from products manufactured by the Johns–Manville Corporation." *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 725 (2d Cir. 1992), *opinion modified on reh'g*, 993 F.2d 7 (2d Cir. 1993). The class action litigation that began on November 19, 1990 involved five plaintiffs who brought suit on behalf of themselves and all Trust beneficiaries. *In re Joint E. & S. Districts Asbestos Litig.*, 878 F. Supp. at 487. The plaintiffs sought to establish an equitable restructuring and allocation of the Trust among all beneficiaries and also filed a proposed settlement. *Id.* These five plaintiffs were appointed as class representatives and on February 13, 1991, the Court certified the plaintiffs' lawsuit as a mandatory non-opt-out class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(B). *Id.* The class was defined as all beneficiaries of the Trust "each of whom has or will have a claim either for wrongful death or personal injury caused by exposure to asbestos, or a claim for warranty, guarantee, indemnification or contribution arising from an obligation of the Trust for the payment of a death or personal injury claim." *Id.* (internal citation omitted). The Court of Appeals for the Second Circuit approved the use of a non-opt-out class action, but remanded the case for further proceedings, including the designation of appropriate subclasses. *Id.* at 487–

88; *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 769–70 (2d Cir. 1996). One of the three plaintiff subclasses that were designated was Future Claimants. *Id.* at 770.

After extensive negotiations, the parties filed a stipulation of settlement in July 1994. *In re Joint E. & S. Districts Asbestos Litig.*, 878 F. Supp. at 491–92. The district court then certified the class action to include the following groups before approving the amended settlement:

> All past, present and future Beneficiaries of the Manville Personal Injury Settlement Trust each of whom has or will have a claim either for wrongful death or personal injury caused by exposure to asbestos, or a claim for warranty, guarantee, indemnification or contribution arising from an obligation of the Trust for the payment of death or personal injury claims.

*Id.* at 575. The settlement agreement "provides that the rights and duties of the Trust and all class members, except as specified, are to be governed by . . . [the] Trust Distribution Process ("TDP")." *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d at 770. The TDP provides, in relevant part, that the Trust "is to be treated in litigation as a legally responsible tortfeasor without the introduction of additional proof." *Id.*

## II.  PRESENT MOTION

In the instant Motion for Partial Summary Judgment, JPSB is seeking a partial judgment recognizing that: (1) the Trust is a joint tortfeasor in this act; (2) Plaintiffs' survival action is automatically reduced by the Trust's virile share in accordance with applicable law; and (3) JPSB is entitled to have the jury assess the percentage of JM's fault for Plaintiffs' wrongful death claims. R. Docs. 240, 287, 293. JPSB points to Cary Gomez's original Petition for Damages, in which he identifies Johns-Manville Corporation as manufacturing and distributing panels to Wayne Manufacturing Company. *See* R. Doc. 1-2 at 7. JPSB contends that prior federal judgments that were entered in the JM non-opt-out class action litigation bind Plaintiffs and JPSB, as they were all represented class members in the previous litigation and therefore the Trust is a legally responsible joint tortfeasor with whom Plaintiffs settled. R. Doc. 240 at 1. As a result, JPSB,

4

argues, any defendant that is found at fault is entitled to an automatic reduction of the survival action verdict by the Trust's virile share in accordance with Louisiana law and is entitled to have JM listed on the jury verdict form so that the jury can assess JM a percentage of fault for Plaintiffs' wrongful death claims. R. Doc. 240 at 1–2.

In opposition, Plaintiffs argue that they have neither settled with nor even made a claim against the Trust, so it should not be immediately deemed a joint tortfeasor ahead of trial. R. Doc. 290 at 2. Specifically, Plaintiffs aver that they have never filed a claim with the Trust, nor have they intended to do so at any point in the litigation to date, so JPSB should not benefit from a virile share credit for the liability of a joint tortfeasor that does not even exist. R. Doc. 290 at 3. Plaintiffs argue that only the fact-finders at trial can determine whether JM is a solidary obligor, at which time JPSB can seek to recover a virile share if Plaintiffs in fact settled with the Trust. R. Doc. 290 at 4. Plaintiffs thus contend that there are sufficient genuine issues of material fact that defeat summary judgment on this matter. R. Doc. 290 at 2.

**III.   LAW AND ANALYSIS**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50.

### A. Issue Preclusion

Under the federal rules of issue preclusion, a party is prevented from re-litigating issues if:

(1) [ ] the issue at stake [is] identical to the one involved in the prior litigation;
(2) [ ] the issue has been actually litigated in the prior litigation; and
(3) [ ] the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

*Terrell v. DeConna,* 877 F.2d 1267, 1270 (5th Cir. 1989) (citing *Wehling v. Columbia Broadcasting System*, 721 F.2d 506, 508 (5th Cir. 1983)).

JPSB contends that these elements for issue preclusion are satisfied in this case because there are several issues at stake here that were actually litigated in the prior JM Litigation and were a "critical and necessary part of the judgment" in that litigation. R. Doc. 2401- at 12. Specifically,

JPSB avers that the following three issues are ones that were previously resolved and are now precluded:

1. Whether the Trust is to be treated in a suit between Trust Beneficiaries as a legally responsible tortfeasor without the introduction of additional proof;
2. Whether the Trust is to be treated in a suit between Trust Beneficiaries as a settling joint tortfeasor rather than a bankrupt entity; and
3. Whether a Trust Beneficiary's claims (such as the plaintiffs' claims herein) are set-off in accordance with applicable state law governing contribution rights among joint tortfeasors.

R. Doc. 240-1 at 12. JPSB thus argues that the prior federal judgments entered in the JM Litigation preclude Plaintiffs from re-litigating these issues and the Trust should be deemed a joint tortfeasor for purposes of contribution rights in this case. R. Doc. 240-1 at 12.

### B. Res Judicata and Claim Preclusion

The U.S. Supreme Court has held that:

> There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation . . . Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply. A judgment in favor of the plaintiff class extinguishes their claim, which merges into the judgment granting relief. A judgment in favor of the defendant extinguishes the claim, barring a subsequent action on that claim. A judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment.

*Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) (internal citations omitted).

"The central purpose of each of the various forms of class action is to establish a judgment that will bind not only the representative parties but also all nonparticipating members of the class certified by the court." 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4455 (3d ed. 1998). "The general rule is that 'a judgment in a class action will bind the absent members of the class.'" *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 454 (5th Cir. 2016) (quoting *Gonzales v. Cassidy*, 474 F.2d 67, 74 (5th Cir. 1973)). Moreover, the Supreme

Court has held that "the Manville Confirmation Order is *res judicata* 'to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *In re Johns-Manville Corp.*, 552 B.R. 221, 252 (Bankr. S.D.N.Y. 2016) (quoting *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 152 (2009)). The test for preclusion based on res judicata involves four steps: (1) "there must be a final judgment on the merits"; (2) "the decision must have been rendered by a court of compet[e]nt jurisdiction"; (3) "the parties or their privies must be identical in each suit"; and (4) "both suits must concern the same cause of action." *In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 861 F.2d 814, 816 (5th Cir. 1988) (internal citation omitted).

In this case, JPSB argues that all four requirements of the test for preclusion based on res judicata have been met. First, JPSB avers that there is a final judgment on the merits approving the Stipulated Settlement and TDP. R. Doc. 240-1 at 16. Second, JPSB asserts that the courts that rendered the judgments in the JM Litigation were courts of competent jurisdiction. R. Doc. 240-1 at 16. Third, JPSB contends that the parties here were class members and represented parties in the previous JM Litigation, with Plaintiffs' interests being adequately represented by the Future Claimants subclass. R. Doc. 240-1 at 16. Fourth, JPSB alleges that the JM Litigation and the instant case concern the same cause of action—namely, Plaintiffs' claims for damages arising out of Cary Gomez's exposure to asbestos. R. Doc. 240-1 at 17.

**C. Set-Off of Survival Action Claim by the Trust's One Virile Share**

Pursuant to pre-comparative fault law of Louisiana, which undisputedly governs this case, *see* R. Docs. 240-1 at 18, 290 at 6, joint tortfeasors are solidarily liable for a tort victim's injury. *See Cole v. Celotex Corp.,* 599 So. 2d 1058, 1068 (La. 1992). Under solidary liability, "the obligee,

at his choice, may demand the whole performance from any of the joint and indivisible obligors." *Berlier v. A.P. Green Indus., Inc.*, 2001-1530 (La. 4/3/02), 815 So. 2d 39, 47. Therefore, a solidary obligor from whom the whole performance is sought may seek "contribution" from a joint tortfeasor in the amount of the joint tortfeasor's "virile share." *Daniels v. Conn*, 382 So. 2d 945, 953 (La. 1980). If a plaintiff settles with a joint tortfeasor, then the joint tortfeasor is released from paying contribution to the solidary obligor and the plaintiff's recovery against the solidary obligor is reduced by the settling joint tortfeasor's virile share. *Wall v. Am. Emp. Ins. Co.*, 386 So. 2d 79, 82 (La. 1980). However, before the recovery against the solidary obligor can be reduced by the settling party's virile share, it must be proven that the settling party was a joint tortfeasor. *Id.* at 82–83. Therefore, before a solidary obligor can receive a "virile share credit," Plaintiffs must release a party through settlement—thereby precluding the remaining solidary obligors from seeking contribution from that party—and the released party's liability as a joint tortfeasor must be established at trial. *Id.*

In this case, JPSB argues that the JM Litigation and TDP establish that the Trust is a legally responsible tortfeasor and JPSB is therefore entitled to have any judgment against it reduced by the Trust's one virile share. R. Doc. 240-1 at 19. JPSB also states that while this is a federal issue involving a federal settlement, a Louisiana Court of Appeals case supports JPSB's contention that it is entitled to a virile share credit for JM's portion of the judgment. R. Doc. 240-1 at 20. In *Abadie v. Metropolitan Life Insurance Company*, the court held that because the jury had found JM liable to the plaintiffs, JM should have been assigned a virile share and the Trust's solvency should not have been considered when assigning virile shares. 00-344 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46, 85.

In opposition, Plaintiffs contend that JPSB would only be entitled to this virile share credit if Plaintiffs had settled with and released the Trust and the Trust was found liable at trial. R. Doc. 290 at 7. Plaintiffs dispute JPSB's contention that they previously settled with the Trust, as they have not even made a claim against the Trust, let alone had the Trust approve the claim. R. Doc. 290 at 14. Plaintiffs point to the fact that a settlement or "compromise" is defined in the Louisiana Civil Code as being a "contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code Art. 3071. Plaintiffs argue that a contract is only formed when there is offer and acceptance and there must be a meeting of the minds—namely, that the parties intend to enter into settlement. R. Doc. 290 at 14. In *Abadie*, which JPSB cites as supporting its contention that JM should be assigned a virile share credit, JM had been included as a defendant and the jury had found JM liable, which gave rise to the assignment of a virile share credit for JM. R. Doc. 290 at 10. Moreover, in *Romano v. Metropolitan Life Insurance Company*, the Louisiana Court of Appeals conclude that because the plaintiffs had not settled with JM, the defendant was not entitled to a virile share credit under Louisiana's solidary liability regime. 2016-0954 (La. App. 4 Cir. 5/24/17), 221 So. 3d 176, 181.

The Court concludes that summary judgment on the issue of whether JM should be automatically assigned a virile share credit is not appropriate at this time. Unlike in *Abadie*, in this case, no jury has yet found that JM is liable to Plaintiffs. The only mention of JM in this litigation is one sentence in the original Complaint that appears to tie JM to Avondale shipyard, where Plaintiff-decedent Cary Gomez's father worked. *See* R. Doc. 1-2 at 7. Accordingly, it appears that Plaintiff-decedent Cary Gomez himself was not directly exposed to JM asbestos-containing products, but rather, that his father may have brought the asbestos home with him on his clothes.

It is therefore clear that the nature and extent of the alleged exposure and whether the exposure caused Plaintiff-decedent Cary Gomez's mesothelioma are not established and would need to be proven before the Trust could even be found liable. Because genuine issues of material fact exist, it is not appropriate for the Court to grant summary judgment on this issue.

IV. **CONCLUSION**

For the reasons stated above and on the record during oral argument,

**IT IS ORDERED** that Defendant Jefferson Parish School Board's part of the Motion for Partial Summary Judgment, R. Docs. 240, 287, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Huntington Ingalls Incorporated's part of the Motion for Partial Summary Judgment, R. Doc. 240, is **DENIED AS MOOT**. As discussed above, Defendant Huntington Ingalls Incorporated voluntarily withdrew from this Motion. R. Doc. 406.

New Orleans, Louisiana, this 13th day of May, 2020.

_____
UNITED STATES DISTRICT JUDGE